Bruce, Administrator, etc., Appellant, vs. Miller and another, Respondents.

*September 24 — October 9, 1888.*

*Appeal to S. C.: Findings of fact: Conflicting testimony: Mortgages: Quitclaim deed: Agreement to reconvey.*

There being a direct conflict in the testimony in this case as to an alleged agreement by the defendant to reconvey lands quitclaimed to him while he held a mortgage thereon, and the finding of the trial court that there was no such agreement not being against a clear preponderance of the evidence, this court declines to disturb such finding.

APPEAL from the Circuit Court for *Fond du Lac* County. The action was originally brought in September, 1884, by the plaintiff's intestate, Olive P. Posten, to enforce specific

performance of an alleged contract by the defendant *William A. Miller* to convey to her forty acres of land in the county of Green Lake.

It appears that Alexander B. Posten, the husband of Olive, who died in 1882, and who was the owner of the land in question and also of a farm in Fond du Lac county, executed two mortgages in 1871 and 1872, respectively, upon all of the land above mentioned, to L. E. Reed, of Ripon, to secure loans amounting to over $5,000. His wife, Olive P., joined in executing said mortgages. These mortgages were subsequently (and before 1878) assigned to the defendant *Miller*. In 1878 Posten and his wife conveyed the Green Lake forty acres by quitclaim deed to *Miller*, who afterwards conveyed the same to one Theodore Miller. Theodore conveyed the land to the defendant *Pearson*.

It is alleged in the complaint that Posten and his wife did not know that the Green Lake forty acres was included in these mortgages until 1878, and that during that year *Miller* agreed that if they would convey the forty acres to him he would reconvey the same to Olive P., which was the only consideration of their quitclaim deed to *Miller*. The complaint prayed that the defendant *Miller* be required by the judgment of the court to make such conveyance to Olive P., or, if it should appear that *Pearson* is a *bona fide* purchaser of the land, that *Miller* be required to pay her the value thereof.

The answer of *Miller* denies that Posten and his wife were thus ignorant of the fact that the mortgages included the forty acres, and denies the alleged agreement to convey the lands to Mrs. Posten. The defendant *Pearson* claims in his answer to be a *bona fide* purchaser of the land for value, without notice of the claim of Mrs. Posten.

The trial of the cause in the circuit court resulted in findings "that the description of said land in said mortgages was not fraudulently inserted therein, but it was intended

and understood by Alexander B. Posten, and Olive P. Posten, his wife, and this plaintiff, and L. E. Reed, the mortgagee named in said mortgages, at the time of the execution thereof, that they should cover and include said land." Also "that the defendant *William A. Miller* did not, at the time of the execution of said quitclaim deed, or at any other time, promise to reconvey to the plaintiff or the said Alexander B. Posten the real estate conveyed to the defendant *William A. Miller* by the said quitclaim deed." The court thereupon rendered judgment for the defendants, dismissing the complaint, with costs. After judgment, the plaintiff Olive P. Posten died, and the suit was subsequently continued in the name of the present plaintiff as administrator of her estate. The plaintiff appeals from the judgment.

*De W. C. Priest*, for the appellant.

For the respondents there was a brief by *Spence & Hiner*, and oral argument by *T. W. Spence*.

LYON, J. The questions involved in this appeal require but little discussion. Mrs. Posten testified on the trial that she did not know the land in question was included in either of the two mortgages until 1878, when the defendant *Miller*, who then owned said mortgages, said to her husband and herself that he did not know the land was so included or how it came to be included; that it did not belong to him and he did not want it; and that if they would quitclaim it to him and cut off mortgages he would quitclaim right back. Also that the quitclaim to *Miller* was made on the faith of that promise, and that she subsequently requested him to make the promised conveyance, which he refused to do. There was no other testimony introduced on behalf of the plaintiff, except the record and testimony in an action theretofore brought by Mrs. Posten against *Miller* to redeem the Fond du Lac farm, which had

AUGUST TERM, 1888. 407

Bruce, Adm'r, etc. vs. Miller and another.

been sold on the foreclosure by *Miller* of a certain mortgage upon it, in which action the plaintiff was defeated. The record, and the testimony contained in it, does not seem to have any particular bearing upon this case.

On the other hand, the defendant *Miller* denied making any promise at any time to reconvey the land, and testified that the consideration of the quitclaim deed thereof to him was his release of certain property in the city of Ripon from the lien of a mortgage upon it owned by *Miller*, and executed by Posten and wife, which Ripon property Posten had theretofore conveyed by deed of warranty. Also that the object of such conveyance of the forty acres was to save the expense of a foreclosure of the mortgages. Judge Reed, the mortgagee named in the mortgages on the forty acres in question, testified that Posten well knew the forty acres was included in the mortgages; and, further, that he was present at the negotiations which resulted in the conveyance of the forty acres to *Miller*, and that *Miller* made no promise to reconvey; and such quitclaim deed was executed for the purpose of saving the expenses of a foreclosure, and in consideration of the release by *Miller* of the Ripon property, as testified to by him. Other witnesses were called by the defendants, who to some extent corroborated the testimony of *Miller* and Reed.

Thus it will be seen that the testimony is in direct conflict. The learned circuit judge before whom the witnesses were examined rejected the testimony of Mrs. Posten, and gave credit to that introduced on behalf of the defendants. It was entirely competent for him to do so. To disturb his findings of fact would be to overrule an uninterrupted line of decisions by this court to the effect that the findings of the trial court will never be disturbed, unless they are against a clear and satisfactory preponderance of evidence. Were we called upon to express an opinion on that subject, we should be inclined to say that the preponderance of evi-

dence supports such findings.   Hence, without determining the effect of the statute of frauds, or of the alleged laches of Mrs. Posten upon the case, we must affirm the judgment of the circuit court.

*By the Court.*— Judgment affirmed.